**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES FABUNMI, Dr.,
Plaintiff-Appellant,

v.

No. 97-2597

UNIVERSITY OF MARYLAND AT
COLLEGE PARK,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-95-2243-CCB)

Argued: October 28, 1998

Decided: February 23, 1999

Before ERVIN and HAMILTON, Circuit Judges, and
MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Ethelbert Patrick, LAW OFFICE OF RICHARD
E. PATRICK, P.L.C., Alexandria, Virginia, for Appellant. Anne Love
Donahue, Assistant Attorney General, Baltimore, Maryland, for
Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of
Maryland, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. James Fabunmi was denied tenure in the University of Maryland's Department of Aerospace Engineering ("Aerospace Department"). Dr Fabunmi subsequently sued the University, claiming racial and national origin discrimination under Title VII of the Civil Rights Act. Following a bench trial, the district court ruled in favor of the University. Dr. Fabunmi now appeals.

The record indicates that reasonable minds could-- and did -- disagree as to whether Dr. Fabunmi merited tenure. Such disagreement does not support a Title VII claim, however. Absent credible evidence of unlawful discrimination, federal courts are obliged to refrain from questioning the wisdom of academic tenure decisions. We affirm the judgment of the district court.

I.

The district court took jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e(1) - 2000e(17). This Court has jurisdiction over the timely appeal from a final order of the district court pursuant to 28 U.S.C. § 1291.

II.

In 1981 the Chair of the Aerospace Department hired Dr. Fabunmi, a black, Nigerian-born aerospace engineer, as an associate professor of engineering. The previous year Dr. Fabunmi had applied for an open faculty position within the department, but the departmental search committee selected another, more highly-ranked applicant. After the position was filled, the department Chair, believing that Fabunmi would be a valuable addition to the Aerospace faculty, obtained extra-departmental funds through a University-wide program

2

intended to increase minority hiring. These additional funds enabled the Chair to create a second tenure-track position for Dr. Fabunmi.

Dr. Fabunmi applied for tenure in 1985. As per standard University procedure, Dr. Fabunmi's application was reviewed by an inter-departmental tenure committee. This committee voted against a grant of tenure to Dr. Fabunmi. The committee then forwarded a report of its deliberations and a letter from the Chair recommending against tenure to the Dean of the College of Engineering. The Dean, who had learned of a newly-received outside letter of recommendation favorable to Dr. Fabunmi, asked the departmental committee to reconsider its vote. The committee met once again, and again voted to deny tenure. Pursuant to a request by the University administration, the Dean made certain that the department had committed no procedural errors. Declaring himself satisfied with the handling of the case, the Dean confirmed the denial of tenure.

Written policies govern tenure reviews at the University of Maryland. The University's statement of tenure policies provides that an applicant shall not have the right to an appeal when neither the departmental tenure committee nor the department chair has recommended tenure. Despite the existence of this policy, the Chancellor of the University of Maryland appointed an ad hoc committee to review the conduct of the Aerospace Department in Dr. Fabunmi's case. Both the ad hoc committee and the Chancellor gave their sanction to the Dean's final denial of tenure.

Soon thereafter, Dr. Fabunmi filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). When he received a "right to sue" letter from the EEOC, Dr. Fabunmi filed suit in district court, alleging that the University's rationale for denying him tenure was a pretext for unlawful discrimination. As evidence of this pretext, Dr. Fabunmi asserted that his credentials were comparable to those of two other faculty members who had recently been granted tenure in the Aerospace Department, and that his tenure review had been tainted by procedural irregularities. Dr. Fabunmi further alleged that on several occasions the Chair of the Aerospace Department made statements indicative of racial animus.

The district court held a lengthy hearing on the matter. The record indicates that the court had the benefit of a very thorough presentation of the evidence, including direct testimony from those members of the

Aerospace Department who were involved in Dr. Fabunmi's tenure review. The district court was also provided with all relevant documents from Dr. Fabunmi's tenure file. At the conclusion of this hearing the court found that Dr. Fabunmi had not proven that he was denied tenure as the result of racial discrimination or of discrimination based upon his national origin.

III.

We review tenure decisions with "trepidation," mindful that it is the University, not this Court, which rightfully determines a candidate's scholarly potential. Jiminez v. Mary Washington College, 57 F.3d 369, 376 (4th Cir. 1995). A professor who pursues a Title VII action in a tenure case cannot prevail merely by demonstrating that his tenure vote was animated by interpersonal conflict or petty academic politics. Rather, as does any Title VII plaintiff, a professor bears the ultimate burden of persuading this Court that unlawful discrimination has in fact occurred. See id. at 377 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

The district court found that Dr. Fabunmi failed to prove discrimination by a preponderance of the evidence. In a thoughtful opinion from the bench, the court examined the circumstances of Dr. Fabunmi's hiring, employment, and tenure review, and acknowledged the poor personnel management practices within the Aerospace Department. Yet the court found no credible basis for a claim of racial or ethnic bias in the tenure decision. We concur.

Dr. Fabunmi also asserts as error the district court's grant of the defendant's motion in limine to exclude the testimony of Dr. Mark Lewis. Dr. Lewis is a white member of the Aerospace faculty who was tenured eight years after Dr. Fabunmi's review took place. Dr. Lewis allegedly received preferential treatment from the Dean of the College of Engineering during what became a protracted and contentious review process. We find that the district court did not abuse its discretion when it determined that the questionable probative value of Dr. Lewis' testimony was outweighed by the potential for an irrelevant digression into the merits of the Lewis tenure decision.

AFFIRMED

4